# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| SNYDERS HEART VALVE LLC § | |
| § | |
| v. § | Civil Action No. 4:16-CV-00812 |
| § | Judge Mazzant |
| ST. JUDE MEDICAL S.C., INC., ET AL. § | |
| § | |

### MEMORANDUM ADOPTING IN PART REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been heretofore referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636. On March 7, 2018, the report of the Magistrate Judge was entered containing proposed findings of fact and recommendations ("the Report") (Dkt. #316) that Defendants St. Jude Medical S.C., Inc., St. Jude Medical, Cardiology Division, Inc., and St. Jude Medical, LLC's (collectively, "St. Jude" or "Defendants") Motion for Summary Judgment of Improper Venue (Dkt. #178) be granted and the case be dismissed for improper venue. Snyders Heart Valve, LLC's ("Snyders" or "Plaintiff") filed objections to the Report (Dkt. #319), to which Defendants filed a response (Dkt. #321). The Court held a hearing on the objections on May 30, 2018.

The Court has made a *de novo* review of the objections raised by Plaintiff and is of the opinion that the Magistrate Judge's ultimate conclusion that venue is improper in the Eastern District of Texas is correct and the objections are without merit as to the Magistrate Judge's ultimate conclusion. The Court hereby adopts the conclusions of the Magistrate Judge to the extent explained below and supplements the Report with the following findings and conclusions.

Because of the procedural posture of this case, the Court first discusses the relevant background. Defendants made their first challenge to improper venue, asserting a challenge based

on the safe harbor provision, on January 17, 2017 (Dkt. #20); however, the motion was withdrawn (Dkt. #29) pursuant to the parties' Joint Motion Re: Discovery and Briefing Schedule for the St. Jude Medical Defendants' Jurisdiction/Venue/Transfer Motion (Dkt. #27).  In this joint motion, the parties agreed to a schedule for preliminary discovery on jurisdiction and venue, allowing for Defendants to file preliminary motions on jurisdiction, venue, and transfer after completion of discovery (Dkt. #27).

On February 13, 2017, after the parties completed discovery, Defendants filed their Opposed Motion to Dismiss Under Fed. R. Civ. P. 12(b)(3) and Plaintiff's and Defendants' Joint Motion to Hold Defendants' Opposed Motion to Dismiss in Abeyance (Dkt. #33).  In that motion, Defendants contended that venue was improper under both prongs of § 1400(b), and the parties jointly requested the Court to hold the motion in abeyance pending the Supreme Court's ruling in *TC Heartland* (Dkt. #33).  The Court denied the parties' request to hold the motion in abeyance (Dkt. #42); accordingly, briefing on the motion to dismiss proceeded as prescribed by the Eastern District of Texas Local Rules and the Federal Rules of Civil Procedure.  In Defendants' Brief in Support of its Opposed Motion to Dismiss Under Fed. R. Civ. P. 12(b)(3), Defendants raised their challenge to venue based on the safe harbor provision (Dkt. #44).  However, on May 12, 2017, the Court denied the motion to dismiss explaining that even though the Supreme Court of the United States had granted certiorari in *In re TC Heartland*, the Federal Circuit had determined venue in cases alleging patent infringement was proper in "'any district where there would be personal jurisdiction over the corporate defendant at the time the action is commenced.'"  (Dkt. #98 at p. 2 (quoting *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1583 (Fed. Cir. 1990); *In re TC Heartland LLC*, 821 F.3d 1338, 1342–43 (Fed. Cir. 2016)).

2

On May 22, 2017, the United States Supreme Court decided *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017). In *TC Heartland*, the Supreme Court decided that "[a] domestic corporation 'resides' only in its State of incorporation for purposes of the venue statute." 137 S. Ct. at 1517. In light of the new decision, St. Jude filed their Motion to Reconsider the Court's May 12, 2017 Order Denying St. Jude's Motion to Dismiss for Improper Venue (Dkt. No. 98), and St. Jude's Renewal of the Same (Dkt. #110). In the motion for reconsideration, St. Jude again argued that venue was not proper under either prong of § 1400(b), asserting a challenge based on the safe harbor provision (Dkt. #110). Instead of contesting the facts surrounding the safe harbor, Snyders argued that the safe harbor was irrelevant to the venue consideration and that St. Jude stipulated[1] to the fact that it sold accused products in the district (Dkt. #125).

In considering the arguments, the Magistrate Judge recommended that, pursuant to *TC Heartland*, Defendants did not reside in this District, but used Defendants' stipulation to determine that there were alleged acts of infringement in this District (Dkt. #165). The Magistrate Judge further recommended that because the safe harbor provision was an affirmative defense raised by Defendants, Plaintiff was not required to negate the same to establish venue (Dkt. #165). Both Snyders and St. Jude filed objections to this conclusion (Dkt. #170; Dkt. #171). The Court overruled the objections and adopted the findings and conclusions of the Magistrate Judge as those of the Court (Dkt. #188).

---

[1] Defendants stipulated to the following:

> 2. Defendants will not contest in this case the "regular and established place of business" prong of 28 U.S.C. 1400(b); and
> 3. Defendants will not contest in this case that this is a district where Defendants have sold accused products. (Defendants may, however, argue that any such sales are not acts of infringement, pursuant to 35 U.S.C. 721(e)(1)).

(Dkt. #125, Exhibit 3 at p. 1).

Subsequently, on September 27, 2017, Defendants filed their Motion for Summary Judgment of Improper Venue, again arguing that based on the safe harbor provision, there were no acts of infringement committed in this District and venue was improper (Dkt. #178). Snyders maintained that the safe harbor provision was irrelevant to venue, while not contesting the alleged facts surrounding the venue challenge (Dkt. #184). This time, the Magistrate Judge recommended that the safe harbor provision, in this case, is relevant to the venue inquiry and recommended granting Defendants' motion for summary judgment (Dkt. #316).

Before delving into the arguments of the parties, the Court finds that Defendants' motion for summary judgment should be treated as a motion for reconsideration of the Court's previous venue rulings.[2] The Court is permitted to maintain its own docket and reconsider rulings when justice so requires. FED. R. CIV. P. 60(a). In this case, the Court finds that justice requires the Court to re-examine Defendants' venue challenge at this time. Even though the Court treats this as a motion for reconsideration, as opposed to a motion for summary judgment, the Court still addresses Plaintiff's objections. Plaintiff filed objections to the Report on both procedural and substantive grounds. St. Jude responds that all of Plaintiff's objections are without merit and the Report is correct and well-reasoned. The Court addresses Plaintiff's objections and St. Jude's responses thereto in turn.

I. **Procedural Objections**

According to Plaintiff, "[t]he Report rejects Snyders' procedural challenges to [St. Jude's] motion. But it does not address two of those challenges at all, and errs in rejecting the third." (Dkt. #319 at p. 1). The Court considers each of Snyders' procedural challenges in turn.

---

[2] The Court need not decide the issue of whether summary judgment is an appropriate vehicle to challenge venue because the Court construes this motion as a motion to reconsider the Court's prior rulings regarding Defendants' venue challenge.

4

### A. Preclusive Effect of the Court's Rulings on St. Jude's 12(b)(3) Motion

Plaintiff argues that Defendants were already fully heard on their venue challenge. Plaintiff correctly identifies that Defendants are permitted to submit any evidence available in support of a motion to dismiss for improper venue, and that, in this case, Defendants did submit evidence. Plaintiff maintains that the Court already ruled on Defendants' arguments regarding venue and that Defendants should not be allowed to make their same arguments again before the Court.

The Court is not persuaded. In a case where a defendant had the "full opportunity to develop his case for lack of venue, following which the court found facts on conflicting evidence to support venue", then that court is "not obliged to retrace its steps and examine the identical contention in the light of new evidence belatedly offered.'" *Ryan v. Glenn*, 336 F. Supp. 555, 556–57 (N.D. Miss. 1971). Although not binding on the Court, the Court finds *Ryan* persuasive because of the unique procedural grounds of this case.

*Ryan* permits the Court to review Defendants' venue challenge at this stage in the litigation. Here, the Court had not yet made factual findings on any of the evidence submitted in support of Defendants' venue challenge prior to Defendants filing the present venue challenge. As opposed to making a factual determination on the evidence submitted by the parties on Defendants' motion to dismiss, the Magistrate Judge recommended, and the Court adopted, a holding that Plaintiff did not need to overcome an affirmative defense on a motion to dismiss, i.e. the Court denied the Defendants' Rule 12(b)(3) motion on procedural grounds without addressing the substantive nature of the motion. Accordingly, this case is factually distinguishable from *Ryan* because the Court has never considered the evidence submitted in support of Defendants' venue challenge. *See id.* Moreover, although a court "is not obliged to retrace its steps", it is not prevented from doing so. *See id.* at 557. Indeed, as previously stated, the Court is permitted to maintain its own

5

docket and reconsider rulings when justice so requires. FED. R. CIV. P. 60(a). The Court finds that justice requires the Court to "retrace its steps and examine" Defendants' venue challenge despite its previous procedural rulings on Defendants' venue challenge.

### B. Timeliness of St. Jude's Venue Challenge Under Federal Rule of Civil Procedure 12

Snyders objects that the Report did not consider its timeliness argument. Snyders argues that Rule 12 requires that all venue challenges, made pursuant to Rule 12 or not, be made before any responsive pleading is filed. Snyders identifies that St. Jude's motion was not filed until six months after filing a responsive pleading; accordingly, Snyders avers that the motion is late.

Whether or not the Report addressed this argument is immaterial. Even though Federal Rule of Civil Procedure 12 requires defendants to assert a venue challenge before filing a responsive pleading, courts often consider motions timely for purposes of Rule 12 as long as the defense is properly preserved in the party's answer. *Brokerwood Int'l (U.S.), Inc. v. Cuisine Crotone, Inc.*, 104 F. App'x 376, 379–81 (5th Cir. 2004); *Isbell v. DM Records, Inc.*, No. 4:07-cv-00146, 2011 WL 1299611, at *2 n.2 (E.D. Tex. March 31, 2011) ("courts often 'consider a post-answer motion to dismiss as properly before the court as long as the movant also raised the defense . . . in his or her answer.'" (quoting *Delhomme v. Caremark RX Inc.*, 232 F.R.D. 573, 575–76 (N.D. Tex. 2005))); *Cloeren Inc. v. Extrusion Dies Indus., LLC*, No. 1:12-CV-90, 2012 WL 12897045, at *2 (E.D. Tex. Aug. 14, 2012) ("Although a post-answer Rule 12(b)(6) motion is technically untimely under the Rules, if a defense has previously been included in the answer, a court will generally allow a Rule 12(b)(6) motion." (citing *Jones v. Lopez*, 262 F. Supp. 2d 701, 706 (W.D. Tex. 2001); *Puckett v. United States*, 82 F. Supp. 2d 660, 663 (S.D. Tex. 1999))).

The Court finds that Defendants properly preserved its objection to venue. Here, on December 12, 2017, the Court ordered Defendants to answer or otherwise respond to Snyders'

complaint by January 17, 2017 (Dkt. #18).  As previously noted, Defendants timely filed their motions to dismiss for improper venue (Dkt. #20; Dkt. #33).  Further, in Defendants' answer, St. Jude stated "[a]s set forth in Defendants' pending motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(3) for improper venue and brief in support thereof, Defendants deny venue is proper in this District."  (Dkt. #46 at ¶ 6).  As such, while the motion may technically be untimely pursuant to Rule 12, the Court finds that Defendants properly preserved their objection to venue.

It appears Snyders also argues that Defendants' conduct here constitutes waiver of the objection.  (Dkt. #319 at p. 3 ("Here, [St. Jude] did not file its motion for summary judgment of improper venue until . . . after substantial participation in the case on the merits. . . .")).  The Court notes that a defendant's conduct in the litigation can also constitute waiver.  *Navico, Inc. v. Garmin Int'l, Inc.*, No. 2:16-cv-190, 2017 WL 2957882, at *2 (E.D. Tex. July 11, 2017) (citing *Infogation Corp. v. HTC Corp.*, No. 16-CV-01902-H-JLB, 2017 WL 2869717, at *1 (S.D. Cal. July 5, 2017); *Restoration Hardware, Inc. v. Haynes Furniture Co.*, No. 16 C 10665, 2017 WL 2152438, at *2 (N.D. Ill. May 17, 2017) ("Defendants gave every indication to Plaintiffs and this Court that they were defending the case on the merits here . . . [and, therefore,] waived and/or forfeited their argument that venue is improper . . . .")).[3]  However, such is not the case here.  Defendants repeatedly objected to the propriety of venue in this District, asserting its objection before filing its answer, objecting to venue in its answer, filing a motion for reconsideration after the Court denied its motion to dismiss, and filing the present motion challenging venue prior to filing

---

[3] After the *Navico* decision, the Federal Circuit decided that *TC Heartland* was an intervening change in the law. *In re Micron*, 875 F.3d 1091, 1099 (Fed. Cir. 2017).  The effect of this decision is that defendants did not waive their argument that venue is improper based on the "residence" prong by failing to assert it timely prior to the Supreme Court of the United States' decision in *TC Heartland*, because the defense was unavailable.  However, it is still possible for a defense of improper venue to be waived, and *Navico*'s discussion on the law of waiver remains intact.

7

motions for summary judgment challenging the merits of the case. Accordingly, the Court finds that Defendants have not waived their objection to venue through their litigation conduct.

### C. Timeliness Pursuant to the Parties' Stipulation and Court Ordered Deadlines

Snyders also argues that Defendants did not file their motion timely under the parties' Joint Motion Re: Discovery and Briefing Schedule for the St. Jude Medical Defendants' Jurisdiction/Venue/Transfer Motion. However, the joint motion states: "[t]he St. Jude Medical defendants will file any motions relating to preliminary jurisdiction, venue, and/or transfer issues, by February 8, 2017." (Dkt. #27 at p. 2). The parties then requested an extension of that deadline: "[t]he St. Jude Medical defendants will file any motions relating to preliminary jurisdiction/venue/transfer issues and/or respond to the first amended complaint by February 13, 2017." (Dkt. #31 at p.1). St. Jude filed a preliminary challenge to venue by February 13, 2017, and then subsequently challenged venue in the present motion. The Court finds that this action is not inconsistent with the parties' agreement or the Court's order granting the parties' agreed deadlines.

Snyders additionally avers that Defendants' request to transfer the case in their motion for summary judgment is late pursuant to the Order Governing Proceedings. However, the Court concludes that although the request to transfer may be late pursuant to the Order Governing Proceedings, St. Jude properly preserved the objection and it was not waived through their litigation efforts. Thus, the Court finds that it is in the best interest of the parties to consider the request to transfer.

### II. Substantive Objections

Venue in patent infringement actions is governed by 28 U.S.C. § 1400(b). *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 229 (1957); *TC Heartland LLC*, 137 S. Ct. at 1519

(holding § 1400(b) "is the sole and exclusive provision controlling venue in patent infringement actions."). Under § 1400(b), venue is only proper (1) in the district in which the defendant resides or (2) in a district "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b) (emphasis added).

Snyders argues that venue is proper in this District under both the residence prong and the acts of infringement prong of § 1400(b). St. Jude responds that venue is not proper under either prong. The Court address both prongs of the venue inquiry in turn, examining the "acts of infringement" prong first, as this is the primary thrust of the parties' briefing.

### A. Acts of Infringement

Snyders objects that the safe harbor provision is irrelevant to the venue inquiry, and even if it were relevant, St. Jude cannot prevail on its safe harbor argument. St. Jude responds that, in light of the statutory framework, the safe harbor provision is relevant and that it applies to protect the sales in this District. The Court considers both objections in turn.

#### 1. Relevance of the Safe Harbor Provision

Snyders contends that the Report erred in finding the safe harbor relevant to the venue inquiry. According to Snyders, it must only show "(1) that an act that it alleges to infringe its patent occurred in the district and (2) that [Defendants] were responsible for that act." (Dkt. #319 at p. 4). Snyders argues that the Federal Circuit only requires that the act alleged to infringe takes place in the district. Further, Snyders maintains that it should not have to overcome an affirmative defense to meet its burden.

The Court first addresses on a very broad scope the relevance of the safe harbor provision to the consideration of whether venue is proper. An "act of infringement" is defined in § 271. *See generally* 35 U.S.C. § 271. The safe harbor provision of § 271 provides that "[i]t shall not be an

act of infringement to make, use, offer to sell, or sell within the United States or import into the United States a patented invention . . . solely for uses reasonably related to the development and submission of information under a Federal law which regulated the manufacture, use, or sale of drugs or veterinary biological products." 35 U.S.C. § 271(e)(1). Although not specifically created for the venue inquiry, several courts have looked to § 271 for guidance when determining what constitutes an act of infringement. *See, e.g.*, *Galderma Labs., L.P. v. Teva Pharm. USA, Inc.*, 290 F. Supp. 3d 599, 606 (N.D. Tex. 2017); *Bristol-Myers Squibb Co. v. Mylan Pharm., Inc.*, No. 17-379-LPS, 2017 WL 3980155, at *13 (D. Del. Sept. 11, 2017), *MTEC, LLC v. Nash*, No. CV 08–563–AC, 2008 WL 4723483, at *6 (D. Or. Oct. 20, 2008). Accordingly, the Court finds that the safe harbor is, at the very least, relevant to the venue inquiry because it is found in § 271.

However, when narrowing in on the specifics of the safe harbor provision in relation to venue challenges, the Court finds that in all but the rarest of circumstances, the safe harbor provision will not be relevant to the venue inquiry. The Federal Circuit recently clarified that "the Plaintiff bears the burden of establishing proper venue [under § 1400(b)]." *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018). The Federal Circuit, the Fifth Circuit, and the Eastern District of Texas, have all held that plaintiffs can satisfy this burden with an allegation of infringement and that plaintiffs need not prevail on the merits of its infringement claim to satisfy its venue burden. *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985) (citations omitted); *Gaddis v. Calgon Corp.*, 449 F.2d 1318, 1319 (5th Cir. 1971); *Intellectual Ventures II LLC v. FedEx Corp.*, No. 2:16-CV-980-JRG, 2017 WL 5630023, at *8 (E.D. Tex. Nov. 22, 2017) (citations omitted); *Astute Tech., LLC v. Learners Digest Int'l LLC*, No. 2:12-CV-689-WCB, 2014 WL 12596468, at *5 (E.D. Tex. Apr. 28, 2014) (Bryson, J.). Moreover, the Federal Circuit has identified the application of the safe harbor provision as a "dispute [that] goes to the merits of [the

plaintiff's] complaint, not to [a court's] jurisdiction to hear it." *Amgen, Inc. v. Int'l Trade Comm'n*, 565 F.3d 846, 854 (Fed. Cir. 2009). Therefore, generally, plaintiffs need not overcome a defendant's safe harbor challenge to establish proper venue.

Nonetheless, this case presents a unique set of circumstances. As an initial matter, while the Federal Circuit specifically identified in *Amgen* that a decision on the safe harbor should not be applied to a court's, or in that case the International Trade Commission's, subject matter jurisdiction, it did not make the same holding regarding venue. *Id.* While there are limited similarities between subject matter jurisdiction and venue, there are, clearly, vast differences between the two. The purpose of a court determining whether it has subject matter jurisdiction over a case prior to a determination of the merits is that a court cannot properly rule on the merits of a case if it does not have jurisdiction over the dispute. It naturally follows that if a dispute goes to both the merits and a court's jurisdiction, such court would assume jurisdiction and dismiss a case on the merits as directed in *Amgen*. *Id.* However, the same cannot be said for venue. Proper venue is a personal privilege of the parties which allows the parties to a dispute to have their case heard in the proper place. *See, e.g.*, *Hunt v. Bankers Trust Co.*, 799 F.2d 1060, 1068 (5th Cir. 1986). Unlike subject matter jurisdiction, proper venue is a privilege that can be waived. *See, e.g.*, *City of New Orleans v. Mun. Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004); *Hunt*, 799 F.2d at 1068. Thus, a court may properly make decisions on the merits of a case even if venue is not proper in that court. In this case, if the Court determined venue was proper but then dismissed portions of the case based on the merits of the safe harbor provision, as directed by *Amgen*, it would only be able to dismiss the ten sales that took place in the Eastern District of Texas, leaving only allegations of infringement that took place outside this District. In a case where the facts are undisputed, this is not the proper result.

Most significantly, and what separates this case from other venue disputes, the parties agree to all the facts surrounding the venue challenge. If the facts were not agreed to by the parties, the safe harbor provision would likely never work to defeat a plaintiff's ability to sufficiently establish venue. This is an important factual distinction from the cases that decided an allegation of infringement was sufficient. For example, in *Intellectual Ventures II*, the defendants disputed that there were enough pleaded facts to show that the defendants were involved in the activities in the district. *Intellectual Ventures II*, 2017 WL 5630023, at *8. The same can be said for the facts in *Amgen*, as that case presented a dispute as to whether all the importations accused to infringe were entitled to the protection of the safe harbor. *Amgen*, 565 F.3d at 852. Such is not the case here. St. Jude and Snyders agree that ten sales took place in this District, and those ten sales were made for the purpose of clinical trials.[4]

Based on these unique factual and legal circumstances, the Court finds that the safe harbor provision is relevant to the venue inquiry in this case.

### 2. Application of the Safe Harbor Provision

Because the Court determined that the safe harbor provision is relevant to the venue inquiry, the Court turns to whether the safe harbor provision applies in this case. Snyders objects to the Report's conclusion that the safe harbor applies because some of St. Jude's sales of the Portico Products were for commercial purposes. Under Snyders' interpretation of the safe harbor provision, the safe harbor does not apply to any of Defendants' sales because they made some commercial sales; thus, the sales were not "solely" for clinical trials. St. Jude avers that the Report correctly concluded that the safe harbor applied because the ten sales that took place in the Eastern

---

[4] The Court acknowledges that there is a legal dispute concerning the application of the safe harbor provision, but there are no factual disputes surrounding the venue analysis.

12

District of Texas were part of a clinical trial and not approved for commercial sale by the Food and Drug Administration ("FDA").

The parties' dispute centers on statutory construction and the parties' interpretation of the word "solely" in the safe harbor provision. Again, the safe harbor provision protects actions: "to make, use, offer to sell, or sell within the United States or import into the United States a patented invention . . . *solely* for uses reasonably related to the development and submission of information under a Federal law which regulated the manufacture, use, or sale of drugs or veterinary biological products." 35 U.S.C. § 271(e)(1) (emphasis added). The Federal Circuit previously construed this statute, specifically in relation to the use of the word "solely." *Momenta Pharm., Inc. v. Amphastar Pharm., Inc.*, 686 F.3d 1348, 1359–60 (Fed. Cir. 2012). "'Solely' modifies 'uses reasonably related to the development and submission of information,' but does not place any other restriction on when the patented invention may be used without infringing." *Id.* Accordingly, the Federal Circuit concluded that "[a]s long as the use of the patented invention is done to generate information that will be submitted pursuant to a relevant federal law, that use falls within the safe harbor." *Id.* at 1360. Further, "'[e]ach of the accused activities must be evaluated separately to determine whether the exemption applies.'" *Amgen*, 565 F.3d at 852 (alteration in original) (quoting *Merck KGaA v. Integra Lifesciences I, Ltd.*, 545 U.S. 193, 200 (2005)).

Based on this guidance, the Court is unpersuaded that the use of the word "solely" means that any commercial sale precludes the safe harbor from applying to every sale. According to the statutory construction provided by the Federal Circuit, the Court should look activity by activity or use by use, which in this case requires the Court to look at each sale individually. Looking at the ten sales that took place in this District individually, it is undisputed, and has been undisputed since Defendants' motion to dismiss, that the sales were made solely for clinical trials, in other

13

words, "solely for uses reasonably related to the development and submission of information under a Federal law which regulated the manufacture, use, or sale of drugs or veterinary biological products." 35 U.S.C. § 271(e)(1). Therefore, as a matter of law, based on the undisputed evidence, the safe harbor applies to each of the ten sales that took place in this District. Based on this application, there are no remaining activities or uses in this District, and, as such, there is no "act of infringement" to make venue proper in the Eastern District of Texas.

### B. Residence

Snyders objects that the Report did not consider its argument that venue is proper because Defendants reside in the District pursuant to 28 U.S.C. § 1391(d). According to Snyders, *TC Heartland* does not apply to 1391(d) because: (1) only § 1391(c) was at issue in *TC Heartland*; (2) the language of § 1391(d) is different from § 1391(c) and has been recognized to apply to section § 1400(b); and (3) the savings clause of § 1391 does not apply to § 1391(d) because it did not exist at the time of the *Fourco* decision. Snyders "acknowledge[d] that the Court previously rejected [this argument]"; however, because the Court is revisiting the venue challenge, the Court will also address this argument. (Dkt. #319 at p 6).

Despite Snyders' citation to a recent case from the Western District of New York, which is not binding on the Court, this Court still finds no error in the Magistrate Judge's conclusion on the motion for reconsideration that venue is not proper under § 1391(d) based on the Supreme Court's decision in *TC Heartland*. The Court remains convinced that *TC Heartland* expressed clearly that the "savings clause applies to the entire 'section.'" *TC Heartland*, 137 S. Ct. at 1521. As such, the Court adopts the language from the Supreme Court that "'reside[nce] in §1400(b) refers only to the State of incorporation", which means that residence refers only to a corporation's state of incorporation when determining venue in cases alleging patent infringement. *Id.* at 1521

(alterations in original); *accord In re Big Commerce, Inc.*, 890 F.3d 978, 982–83 (Fed. Cir. 2018) (engaging in a discussion regarding where a defendant resides when it is incorporated in a state with multiple districts without conducting an analysis on whether personal jurisdiction still plays a role based on 28 U.S.C. § 1391(d)).  Here, none of the Defendants are incorporated in Texas, and thus, Defendants do not "reside" in the Eastern District of Texas.  Accordingly, venue is improper under the "residence" prong of § 1400(b).

### C. Transfer

Because the Court finds that venue is improper, the Court turns to Defendants' request to transfer this case to the District of Minnesota.  If venue is improper, the Court must dismiss, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a); FED. R. CIV. P. 12(b)(3).  In this case, the Court finds that in the interest of justice, this case should be transferred to the District of Minnesota.

### CONCLUSION

It is therefore **ORDERED** that St. Jude's Motion for Summary Judgment of Improper Venue, which the Court hereby considers a motion to reconsider its previous venue decisions (Dkt. #178) is hereby **GRANTED in part**.  The Court finds that venue is improper in the Eastern District of Texas and this case is hereby transferred to the United States District Court for the District of Minnesota.

**SIGNED this 25th day of June, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE