# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

---

SNYDERS HEART VALVE LLC,

        Plaintiff,

v.

ST. JUDE MEDICAL, CARDIOLOGY
DIVISION, INC., ST. JUDE MEDICAL S.C.,
INC., and ST. JUDE MEDICAL, LLC,

        Defendants.

Civil No. 18-2030 (JRT/DTS)

**MEMORANDUM OPINION AND ORDER
ON CLAIM CONSTRUCTION AND PARTIAL
SUMMARY JUDGMENT**

---

Matthew J. Antonelli and Zachariah S. Harrington, **ANTONELLI,
HARRINGTON & THOMPSON LLP**, 4306 Yoakum Boulevard Suite 450
Houston, Texas 77006, for plaintiff.

Joseph W. Winkels, **CARLSON, CASPERS, VANDENBURGH & LINDQUIST,
P.A.** 225 South Sixth Street Suite 4200 Minneapolis, Minnesota 55402;
Bryan S. Hales, Jay Emerick, and Kristina Hendricks, **KIRKLAND & ELLIS LLP**,
300 North LaSalle Chicago, Illinois 60654, for defendants.

This case presents the issue of whether and when a court should engage in claim

construction on terms previously construed by a coordinate court in the same case and

also whether and when Defendants, here St. Jude Medical, Cardiology Division Inc., St.

Jude Medical, LLC, and St. Jude Medical S.C., Inc. (collectively, "St. Jude"), are precluded

from raising anticipation and obviousness defenses under 35 U.S.C. § 315(e)(2). Because

the Court will find that law-of-the-case/reconsideration principles apply to the claim

construction rulings of the coordinate court in the same case, the Court will only construe

claims here (1) to the extent necessary to account for the Patent Trial and Appeal Board's

("PTAB") decision during Inter Partes Review ("IPR"); and (2) if the prior construction by

the coordinate court was "clearly erroneous." Further, because St. Jude reasonably could

have raised its anticipation and obviousness defenses during IPR, the Court will find that

St. Jude is precluded from raising anticipation and obviousness defenses under 35 U.S.C.

§ 315(e)(2). The Court will, in addition to construing certain claims, therefore also grant

Plaintiff Snyders Heart Valve LLC's ("Snyders") Motion for Partial Summary Judgment on

the issue of preclusion.

**FACTUAL AND PROCEDURAL BACKGROUND**

This case arises out the alleged infringement by St. Jude of two patents owned by

Snyders that deal with Transcatheter Aortic Valve Replacement ("TAVR"). TAVR is,

essentially, minimally invasive heart-valve replacement surgery.[1] Snyders originally filed

this action on October 25, 2016 in the Eastern District of Texas alleging that St. Jude

---

[1] *See Transcatheter Aortic Valve Replacement (TAVR)*, Mayo Clinic (March 21, 2018), https://
www.mayoclinic.org/tests-procedures/transcatheter-aortic-valve-replacement/about/pac
-20384698.

infringed U.S. Patent No. 6,821,297 (the "'297 Patent") and No. 6,540,782 (the "'782 Patent"). (Compl., Oct. 25, 2016, Docket No. 11.)[2]

## I. PRIOR CLAIM CONSTRUCTION HEARING AND JOINT SUMMARY JUDGMENT MOTION

Among other matters, the parties disputed the meaning of 22 claim terms of the asserted patents. (Joint Claim Construction Chart, Sept. 15, 2017, Docket No. 174.) The Magistrate Judge held a claim construction hearing and, with the aid of a technical advisor, issued an order construing the disputed terms. (*See* Claim Construction Order, Oct. 27, 2017, Docket No. 194.) The District Court adopted the Magistrate Judge's constructions and rejected the parties' objections and motions to reconsider. (Order Overruling Claim Construction Objections & Denying Mot. to Reconsider at 2–4, Feb. 20, 2018, Docket No. 309.)

Based on the Texas court's claim construction order, the parties stipulated to non-infringement of certain claims and jointly moved for summary judgment on those claims. (*See* Joint Mot. for Partial Summ. J., Mar. 6, 2018, Docket No. 315; Joint Procedural History Mem. at 1, July 19, 2019, Docket No. 425.)

---

[2] The parties have filed a Joint Procedural History Memorandum that provides a concise history of the procedural posture of this matter. (Joint Procedural History Mem. at 1, July 19, 2019, Docket No. 425.)

## II.    ST. JUDE'S INVALIDITY CONTENTIONS, INTER PARTES REVIEW, THE PTAB'S FINAL WRITTEN DECISION, AND AGREEMENT THAT '297 CLAIMS ARE EXTINGUISHED

St. Jude filed its invalidity contentions on October 5, 2017.  (Decl. of Matthew J. Antonelli ("Antonelli Decl.") ¶ 9, Ex. 9 ("Am. Invalidity Contentions") at 61, July 15, 2019, Docket No. 412-9.)[3]  St. Jude identified seventeen prior patents and eight printed publications that it stated made up the prior art for its invalidity contentions.  (*Id.* at 5-6.) St. Jude did not identify anything outside the patents or written publications in its invalidity contentions.  The two tables below list both the patents and written publications St. Jude listed in its invalidity contentions.

| Prior Art Patents | | |
|---|---|---|
| **Patent/Publication Number** | **Origin** | **Date of Issue / Pub.** |
| U.S. 5,957,949 ("Leonhardt") | U.S.A. | Sept. 28, 1999 |
| U.S. 5,855,601 ("Bessler") | U.S.A. | Jan. 5, 1999 |
| WO 98/29057 ("Letac") | PCT/WIPO | July 9, 1998 |
| U.S. 5,411,552 ("Andersen") | U.S.A. | May 2, 1995 |
| U.S. 6,623,518 ("Thompson") | U.S.A. | Sept. 23, 2003 |
| WO 97/16133 ("Taylor") | PCT/WIPO | May 9, 1997 |
| U.S. 3,671,979 ("Moulopoulos") | U.S.A. | June 27, 1972 |
| U.S. 5,413,599 ("Imachi") | U.S.A. | May 9, 1995 |
| U.S. 6,458,153 ("Bailey") | U.S.A. | Oct. 1, 2002 |
| U.S. 5,545,214 ("Stevens") | U.S.A. | Aug. 13, 1996 |
| U.S. 5,571,215 ("Sterman") | U.S.A. | Nov. 5, 1996 |
| U.S. 2002/0042651 ("Liddicoat") | U.S.A. | April 11, 2002 |
| U.S. 4,056,854 ("Boretos") | U.S.A. | Nov. 8, 1977 |
| U.S. 5,332,402 ("Teitelbaum") | U.S.A. | July 26, 1994 |
| U.S. 4,339,831 ("Johnson") | U.S.A. | July 20, 1982 |

---

[3] The Antonelli Declaration can be found at Docket No. 412.  For ease of reference, the page numbers referred to correspond to the ECF page number listed atop each document.

| U.S. 5,397,351 ("Pavcnik") | U.S.A. | March 14, 1995 |
| U.S. 5,861,028 ("Angell") | U.S.A. | Jan. 19, 1999 |

| **Prior Art Publications** |
| --- |
| H.R. Andersen, et al., *Transluminal Implantation of Artificial Heart Valves. Description of a New Expandable Aortic Valve and Initial Results with Implantation by Catheter Technique in Closed Chest Pigs*, 13 European Heart Journal 704—708 (1992). |
| Steven R. Bailey, *Percutaneous Expandable Prosthetic Valves*, Textbook of Interventional Cardiology 1268—76 (1995). |
| Dwight E. Harken, et al., *Partial and Complete Prostheses in Aortic Insufficiency*, 40 J. Thoracic and Cardiovas. Surg. 744—62 (1960). |
| Stephen L. Hilbert, et al., *Evaluation of Explanted Polyurethane Trileaflet Cardiac Valve Prostheses*, 94 J. Thorac Cardiovac Surg 419—29 (1987). |
| Charles A. Hufnagel, *Basic Concepts in the Development of Cardiovascular Prostheses*, 137 Great Ideas in Surgery 285—300 (Mar. 1979). |
| L.L. Knudsen, et al., *Catheter—implanted Prosthetic Heart Valves* 18 The International Journal of Artificial Organs 253—262 (1993). |
| H.B. Lo, et al. *A Tricuspid Polyurethane Heart Valve as an Alternative to Mechanical Prostheses or Bioprostheses*, XXXIV Trans. Am. Soc. Artif. Intern. Organs 839—44 (1988). |
| St. Jude Medical Heart Valve Division, *The Right Choice for all the Right Reasons*, (1999). |

(*Id.*)

On October 23, 2017, St. Jude filed four petitions for Inter Partes Review, of which two are relevant here. (Antonelli Decl. ¶¶ 1–2, Ex. 1-2.) In these IPR petitions, St. Jude raised the following anticipation and obviousness defenses related to the '782 Patent:

- Claims 1, 2, 4–8, 10–13, 17–19, 21, 22, and 25–30 are anticipated by Leonhardt (*Id.* ¶ 1, Ex. 1 at 12);
- Claims 1, 2, 4–8, 10–13, 17–19, 21, 22, and 25–30 are obvious over Leonhardt in view of Anderson (*Id.*);

- Claims 1, 2, 4–8, 10–13, 17–19, 21, 22, and 25–30 are obvious over Leonhardt in view of Johnson and Imachi (*Id.*);
- Claims 1, 2, 4–8, 10–13, 17–19, 21, 22, and 25–30 are anticipated by Bessler (*Id.* ¶ 2, Ex. 2 at 13);
- Claims 1, 2, 4–8, 10–13, 17–19, 21, 22, and 25–30 are obvious over Bessler in view of Anderson (*Id.*);
- Claims 1, 2, 4–8, 10–13, 17–19, 21, 22, and 25–30 are obvious over Johnson in view of Bessler and Imachi (*Id.*);
- Claims 1, 2, 4–8, 10–13, 17–19, 21, 22, and 25–30 are obvious over Bessler in view of Johnson and Imachi (*Id.*)

Additionally, St. Jude included as exhibits patents from Stevens, Moulopoulos, Teitelbaum, Johnson, Pavcnik, and Bailey. (*Id.* ¶¶ 1–2, Ex. 1 at 7–9, Ex. 2 at 8–10.) St. Jude also included patents not mentioned in their invalidity contentions, including:

- U.S. Patent No. 3,657,744;
- U.S. Patent No. 17,520;
- U.S. Patent No. 3,543,674;
- U.S. Patent No. 4,783,662;
- U.S. Patent No. 6,267,776;
- U.S. Patent No. 1,466,114;
- U.S. Patent No. 2,282,285; and
- U.S. Patent No. 3,253,326.

(*Id.* ¶¶ 1–2, Ex. 1 at 7–9, Ex. 2 at 8–10.)


## III.    TRANSFER MOTIONS

After finding that Texas was an improper venue, the Texas court transferred the case to this Court on July 20, 2018. (Mem. Adopting R&R at 15, June 25, 2018, Docket No.

335.)[4]  The PTAB issued final written decisions on each of St. Jude's petitions in May 2019. (Antonelli Decl. ¶¶ 5–6, Exs. 5–6.)  As a result of the Texas court's claim construction and the PTAB decisions, the parties agreed that all of Snyders' infringement claims relating to the '297 Patent were extinguished and only infringement claims relating to the '782 Patent remained.  (*See* Joint Procedural History Mem. at 5.)

The parties now dispute the meaning of certain terms, most of which were already construed by the Texas court.  The parties also dispute whether law-of-the-case/reconsideration principles apply to terms previously construed by the Texas court. Additionally, Snyders filed a Motion for Partial Summary Judgment arguing St. Jude's anticipation and obviousness defenses are precluded under 35 U.S.C. § 315(e)(2).  (July 15, 2019, Docket No. 409.)  The Court will consider each issue in turn below.

## DISCUSSION

## I.    CLAIM CONSTRUCTION

### A.  Claim Construction Principles

Claim construction is a question of law for the Court.  *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1344 (Fed. Cir. 2002).  "The purpose of claim construction is

---

[4] The motion St. Jude filed is docketed as a "Motion for Summary Judgment of Improper Venue," but the Court treated it as a motion for reconsideration of its previous denial of St. Jude's Motion to Dismiss for Improper Venue under Fed. R. Civ. P. 12(b)(3).  (*See* Mem. Adopting R&R at 15.)

to determine the meaning and scope of the patent claims that the plaintiff alleges have been infringed." *Every Penny Counts, Inc. v. Am. Express Co.*, 563 F.3d 1378, 1381 (Fed. Cir. 2009). Claim terms are given their ordinary and customary meaning as understood by one of ordinary skill in the art at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005). To ascertain this meaning and define the scope of the invention, courts primarily look to intrinsic evidence, including the words of the claims themselves, the specification, and the prosecution history of the patent. *Id.* at 1314.

"[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms." *Id.* Claims, however, do not stand alone but are part of "a fully integrated written instrument," which includes the specification. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed. Cir. 1995). The claims, therefore, "must be read in view of the specification, of which they are a part." *Phillips*, 415 F.3d at 1315 (internal quotation marks omitted). Courts, however, will not import a limitation from the specification into the claims, *id.* at 1320, and the Federal Circuit has "repeatedly warned against confining the claims to . . . embodiments" described in the specification. *Id.* at 1323.

The prosecution history is also intrinsic evidence and "consists of the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent." *Id.* at 1317. The prosecution history, however, "often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.*

Moreover, final written decisions from the PTAB are considered non-binding, intrinsic evidence similar to evidence related to the patent's prosecution history. *See Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2146 (2016) (noting that "different evidentiary burdens" between the IPR proceedings and the court's claim construction "mean that the possibility of inconsistent results is inherent to Congress' regulatory design.")[5]

Although the intrinsic evidence is of primary importance, the Court may also rely on extrinsic evidence in construing a claim term. Extrinsic evidence consists of "all evidence external to the patent and prosecution history, including expert inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980. Extrinsic evidence is less significant than intrinsic evidence in construing claim terms and cannot establish a meaning of the claim term that is at odds with the intrinsic evidence. *Phillips*, 415 F.3d at 1317–18.

The Court should avoid adding extraneous limitations; "that is, limitations added wholly apart from any need to interpret what the patentee meant by particular words or phrases in the claim." *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 950 (Fed. Cir. 1993)

---

[5] *See also Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1360–61 (Fed. Cir. 2017) (extending prosecution disclaimer to IPR proceedings to ensure a patent owner does not argue claims one way to the PTO to "maintain their patentability and in a different way against accused infringers."); *Middleton Inc. v. 3M Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002) (noting for disclaimer to apply, it must be found in the intrinsic evidence). Thus, because the Federal Circuit extended prosecution disclaimer to IPR proceedings and previously stated that disclaimer must be found in the intrinsic evidence, the Court concludes that a PTAB decision should be treated as "less useful" intrinsic evidence similar to the prosecution history. *Phillips*, 415 F.3d at 1317.

(cleaned up). "[T]here must be a textual reference in the actual language of the claim with which to associate a proffered claim construction." *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 990 (Fed. Cir. 1999).[6]

## B. Prior Claim Construction & Standard of Review

St. Jude acknowledges that it is challenging the Texas court's prior constructions on all but one term. Even so, St. Jude argues law-of-the-case/reconsideration principles do not apply because "claim construction . . . can be, and often is, an ongoing process that leads to refinements . . . as the court gains a better understanding of the claims." *Kroy IP Holdings, LLC v. Autozone, Inc.*, 2015 WL 557123, at *2 (E.D. Tex. Feb. 10, 2015).

Although true that a court's prior claim construction can be altered, alteration generally requires the parties to present new evidence. *See Pfizer, Inc. v. Teva Pharms., USA, Inc.* 429 F.3d 1364, 1377 (Fed. Cir. 2005) (noting that prior claim construction may be altered, but only upon "development of the record"). Further, under law-of-the-case/reconsideration principles, "as a rule," courts should be "loathe" to revisit prior decisions of its own or of a coordinate court in the same case unless those decisions were "clearly erroneous and would work a manifest injustice." *Christianson v. Colt Indus.*

---

[6] *See also Phillips*, 415 F.3d at 1312 ("[I]f we once begin to include elements not mentioned in the claim, in order to limit such claim, we should never know where to stop." (cleaned up)).

*Operating Corp.*, 486 U.S. 800, 817–18 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618, n. 8 (1983)).

The Court therefore finds reconsideration and law-of-the-case principles apply to the coordinate court's prior claim construction rulings, and will only revisit terms already interpreted (1) to account for new evidence in the record (*e.g.* the PTAB decisions); or (2) to correct prior constructions that are "clearly erroneous."  *See Colt Indus.*, 486 U.S. at 817.[7]

### C. Term Not Previously Construed

#### 1. "Manipulator"

| Term | Snyders' Proposed Construction | St. Jude's Proposed Construction |
|---|---|---|
| "Manipulator" ('782 Patent, Claims 28 & 29) | *Plain Meaning* | *Plain Meaning; a manipulator cannot be used with a guidewire* |

The Texas court was not asked to interpret "manipulator."  The parties now dispute the term's meaning based on the purported implicit interpretation by the PTAB as a result of the IPR proceeding.

---

[7] *See also Starks v. Rent-A-Center*, 58 F.3d 358, 364 (8th Cir. 1995) (citing *Christianson* and noting that in the Eighth Circuit "a prior decision stands as law of the case, and settled issues are not to be relitigated"); *Caddy Products, Inc. v. American Seating Co.*, No. CIV. 05-800 JRT/FLN, 2008 WL 2447294, at *1 (D. Minn. June 13, 2008) (denying a request to reconsider claim construction because the parties sought only to relitigate old issues).

Claim 28 and 29 of the '782 Patent state, in relevant part:

> an instrument including
>
> a holder having a hollow interior sized for holding the artificial valve when the frame is in the collapsed configuration;
>
> an elongate **manipulator** attached to the holder for manipulating the holder into position between the upstream region and the downstream region.

('782 Patent, cls. 28, 29) (emphasis added.)

The PTAB stated that the prior art disclosed that a guidewire steered the distal end to the desired site and made no definitive statement excluding the use of a guidewire with a manipulator. (Decl. of Joseph W. Winkels ("Winkels Decl.") ¶ 2, Ex. 1 at 33, June 6, 2019, Docket No. 397.)

St. Jude argues that "manipulator" should be given its plain meaning with the limitation that "a manipulator cannot be used with a guidewire." St. Jude argues this construction is necessary because the PTAB implicitly construed the term "manipulator" to exclude the use of a guidewire in response to St. Jude's argument that prior art disclosed a manipulator. The Court disagrees. St. Jude has not sufficiently explained how the PTAB's statement limits "manipulator," and it concedes that there is no intrinsic support for this proposed construction outside the PTAB's decision. *See Johnson Worldwide.*, 175 F.3d at 990 ("[T]here must be a textual reference in the actual language of the claim with which to associate a proffered claim construction.").

Accordingly, the Court will decline to adopt St. Jude's proposed limitation and instead will construe "manipulator" to have its plain meaning.

### D. Previously Construed Terms Affected by New Evidence

1. **"Valve element having . . . a concave downstream side" and "valve element having a convex upstream side" / "valve element having a concave downstream side"**

| Term | Texas Ct. Construction | PTAB Construction/Parties Agreed Construction |
|------|------------------------|-----------------------------------------------|
| **"valve element having a convex upstream side"** (ʼ782 Patent, Claims 10–13) <br><br> **"valve element . . . having a convex upstream side"** (ʼ782 Patent, Claims 18, 19, 21, 22, 25, 29) | *Plain meaning* | "the overall shape of the entire upstream side of the flexible valve element is convex" |
| **"valve element having . . . a concave downstream side"** (ʼ782 Patent, Claims 10–13, 18, 19, 21, 22, 25, 29) | *Plain meaning* | "the overall shape of the entire downstream side of the flexible valve element is concave" |

The Parties agree that the Court should adopt the PTAB's construction as listed above. Accordingly, the Court will adopt the agreed-upon construction and construe the terms consistent with the parties' agreement as stated in the table above.

### 2. "Band"

| Term | Texas Ct. Construction | PTAB Construction | St. Jude's Proposed Construction |
|---|---|---|---|
| **"band"** ('782 Patent, Claims 4, 5, 7, 10-13, 18, 19, 21, 22, 25, 28) | *Plain Meaning* | "a structure generally in the shape of a closed strip or ring" | "a structure generally in the shape of a closed strip or ring **that is not integrated with the frame <u>and </u>not a sleeve**." |

Independent claims 10, 18, and 28 of Patent '782 all mention the term "band." Claim 10 states "a band comprising an internal strip positioned inside and attached to the frame limiting spacing between adjacent anchors of said plurality of peripheral anchors." Claim 18 states "a band surrounding the frame and extending between adjacent elements of said plurality of frame elements to limit spacing between said adjacent elements." Claim 28 states "a band attached to the frame limiting spacing between adjacent anchors of said plurality of peripheral anchors."

The Texas court construed band to be given its plain meaning. In doing so, the Texas court found that a "band" could not be integrated with the frame, expressly rejecting Snyders' proposed construction. (Claim Construction Order at 37.) The Texas court reasoned that the plain language of claims 10 and 28 state that a band was "attached to the frame, which implies that the band is not part of the frame" because the band would then be attached to itself. (*Id.* at 39 (citing *Betcon, Dickinson, & Co. v. Tyco*

*Healthcare Grp., LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010)).  The Texas court went on to reject St. Jude's proposed construction as well because St. Jude's construction required "band" to be outside of the frame, which was inconsistent with Claim 10's plain language stating a "band" can be internal to the frame.  (*Id.* at 39.)

The PTAB considered the Texas court's construction and found the plain meaning of "band" to be reflected by "a structure generally in the shape of a closed strip or ring." (Winkels Decl. ¶ 7, Ex. 6 at 14–15.)  The PTAB, however, also implicitly construed the term "band" to exclude a "sleeve-like structure" in response to St. Jude's argument that prior art anticipated a "band."  (*Id.* at 14, 22) ("Applying this construction, we agree with Patent Owner that graft material 24 is a sleeve-like structure and not a band.")

St. Jude's argues the Court should construe band to mean "a structure generally in the shape of a closed strip or ring that is not integrated with the frame and not a sleeve" for three reasons.  First, St. Jude argues that "a structure generally in the shape of a closed strip or ring" should be adopted because it is similar to the construction Snyders proposed during the Texas *Markman* proceeding.  Second, St. Jude argues that a "band" cannot be integrated with the frame because the Texas court expressly stated as much.  Third, St. Jude argues a "band" cannot be a "sleeve" given the PTAB's implicit definition.  Snyders does not challenge this construction, but notes that if law-of-the-case principles did not apply, it would argue that a band could be integrated with the frame.

Because it appears Snyders argued to the PTAB that a "band" could not be a "sleeve,"[8] because the Texas court provided a reasoned limitation on "band" in the sense that it could not be integrated with the frame but did not account for such a limitation in its construction, and because the parties otherwise agree on the construction, the Court will adopt St. Jude's proposed construction.

Accordingly, the Court construes "band" to mean "a structure generally in the shape of a closed strip or ring that is not integrated with the frame and not a sleeve*."*

### E.  Terms Previously Construed With No New Evidence Presented

St. Jude also challenges the Texas court's interpretations of "valve element," "flaps," "anchor," and "central portion located between the plurality of peripheral anchors."  To the extent the Court will re-open claim construction generally, Snyders challenges the Texas court's interpretation of "flexibly resilient" frame, "along a centerline," and "releasable fastener."  The parties agree that these terms were not interpreted by the PTAB and the parties do not otherwise present new evidence that would affect the Texas court's prior construction.  The Court will only reconstrue the terms then if it finds the prior claim construction to be clearly erroneous.  *See Colt Indus.*, 486 U.S. at 817 (discussing law of the case doctrine).

---

[8] *See Aylus*, 856 F.3d 1353, 1359–60 (Fed. Cir. 2017) (extending prosecution disclaimer to IPR proceedings to ensure a patent owner does not argue claims one way to the PTO to "maintain their patentability and in a different way against accused infringers").

The Court finds that St. Jude has not shown that the prior construction of "valve element,"[9] "flaps," "anchor" and "central portion located between the plurality of peripheral anchors," to be clearly erroneous. Furthermore, the Court finds that Snyders has not shown that the prior construction of the terms "flexibly resilient" frame, "along a centerline," and releasable fastener," to be clearly erroneous. The Court will therefore not revisit the construction of these claims.

Accordingly, the Court will adopt the Texas court's prior construction of said terms.

## II. SUMMARY JUDGMENT

### A. Standard of Review

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of

---

[9] St. Jude spent the majority of its brief and time during oral arguments arguing "valve element" was wrongly construed by the Texas court. St. Jude argued that: (1) Dr. Snyders, the inventor, made a "clear and unmistakable disclaimer" limiting "valve element" to a "unitary, inverted funnel member that does not have a tri-leaflet construction" in his provisional, but not his final patent application; and (2) even if Dr. Snyders did not make a clear and unmistakable disclaimer, a limiting instruction is warranted based on embodiments and deposition statements by Dr. Snyders. The Court finds no clear error in the Texas court's construction. *See MPHJ Tech. Invs., LLC v. Richo Am. Corp.*, 847 F.3d 1363, 1369 (Fed. Cir. 2017) (noting that a "provisional application can contribute to understanding the claims" but that "a person of skill in [the] field would deem the removal" of limiting clauses in the final application "significant"); *Phillips*, 415 F.3d at 1323 ("[W]e have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment."); *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1347 (Fed. Cir. 2008) ("We hold that inventor testimony as to the inventor's subjective intent is irrelevant to the issue of claim construction.").

law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Even so, the nonmoving party may not rest on mere allegations or denials but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial.  *Anderson*, 477 U.S. at 256.  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment is appropriate.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## B.  Preclusion/Estoppel under 35 U.S.C. § 315(e)(2)

Snyders argues that 35 U.S.C. § 315(e)(2) prevents St. Jude from raising any anticipation and obviousness defenses post-IPR because St. Jude could reasonably have raised them during IPR.  Section 315(e)(2) states:

> The petitioner in an inter partes review of a claim in a patent under this chapter that results in a final written decision . . . may not assert . . . in a civil action arising in whole or in part under section 1338 of title 28 . . . that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that inter partes review.

35 U.S.C. § 315(e)(2). IPR is limited to invalidity grounds "that could be raised under section 102 or 103 [which contemplates anticipation and obviousness defenses] and only on the basis of prior art consisting of patents or printed publications." 35 U.S.C. § 311(b). Preclusion under § 315(e)(2) thus requires: (1) a final written decision from the PTAB; (2) challenged grounds that fall under §§ 102 or 103; and (3) the challenged grounds were raised, or reasonably could have been raised during the IPR.

Here, the parties only dispute prong three: whether St. Jude's unpetitioned anticipation and obviousness defenses reasonably could have been raised during the IPR proceeding. § 315(e)(2).[10]

The Court applies the "skilled searcher" standard in making a determination of whether the anticipation and obviousness defenses at issue "reasonably could have" been raised for § 315(e) purposes. *See Polaris Indus., Inc. v. Arctic Cat Inc.*, No. CV 15-4475 (JRT/TNL), 2019 WL 3824255, at *3 (D. Minn. Aug. 15, 2019). Under the skilled searcher standard, a party "reasonably could have raised" a defense pursuant to § 315(e) if the petitioner actually knew about the patent or printed publication or is a patent or written publication that "a skilled searcher conducting a diligent search reasonably could have been expected to discover." *Id.* (*quoting iLife Techs. Inc. v. Nintendo of Am., Inc.*,

---

[10] St. Jude acknowledges that it received a final written decision on all four of its IPR petitions and that all anticipation and obviousness defenses raised in its IPR are precluded.

No. 3:13-cv-4947-M, 2017 U.S. Dist. LEXIS 87769, at *16, 2017 WL 4237535 (N.D. Tex. May 30, 2017).

Even before St. Jude filed its IPR petitions, it had submitted invalidity contentions, in which it identified the patent or printed publications it raises here.  There is no question then that St. Jude had actual knowledge of the patent and written publications prior to its IRP petitions.  St. Jude does not point to any other patents or written publications outside those disclosed in its invalidity contentions it should be able to now use.  Nor does St. Jude specify any anticipation or obviousness defenses, outside of those raised in its IPR petition, that it believes should be raised during this proceeding.

As another district court aptly noted, "for IPR to fulfill its mission of streamlining patent litigation . . . a petitioner cannot be left with the option to institute a few grounds for IPR while holding some others in reserve for a second bite at the invalidity apple once in the district court."  *California Inst. of Tech. v. Broadcom Ltd.*, No. CV 16-3714 GW (AGRX), 2018 WL 7456042, at *6 (C.D. Cal. Dec. 28, 2018).  The Court therefore finds that St. Jude is precluded from raising anticipation and obviousness defenses under 35 U.S.C. § 315(e)(2) because St. Jude reasonably could have raised any combination of them in its IPR petition.

The Court also expressly rejects St. Jude's argument that *Shaw Industries Group, Inc. v. Automate Creel Systems, Inc.* 817 F.3d 1293 (Fed. Cir. 2016) requires a different outcome and that Snyders' motion is premature.  First, *Shaw* is inapplicable.  *Shaw* held

that § 315(e)(2) did not apply to anticipation and obviousness grounds a petitioner chose to include in a petition for IPR, but for which the PTAB chose not institute review on. *Id.* at 1300. The present situation, however, is materially different. Here, the PTAB instituted review on all grounds St. Jude included in its IPR petition.[11] *Shaw* did not discuss preclusion as it relates to unpetitioned grounds. Here, St. Jude chose to petition for IPR , and chose which anticipation and obviousness defenses to include in its petition. The PTAB did not fail to review or otherwise prevent St. Jude from raising any anticipation or obviousness defenses. Second, Snyder's motion is not premature. Although St. Jude may be allowed to supplement its expert report based on the Court's claim construction in this order, St. Jude is bound by its invalidity contentions that list only patents and written publications. *Cf. Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761, 774 (Fed. Cir. 2002).

Accordingly, the Court will grant Snyders' Motion for Partial Summary Judgment on St. Jude's anticipation and obviousness defenses.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

---

[11] The Court also notes that *Shaw* was decided prior to the Supreme Court's decision in *SAS Inst., Inc. v. Iancu*, which held that the PTAB must "address *every* claim the petitioner has challenged" and could no longer pick and choose petitioned grounds to review. 138 S. Ct. 1348, 1354 (2018) (emphasis in original). Thus, every claim a party raises in an IPR petition will be instituted if the PTAB takes up the petition, making *Shaw*'s holding essentially hollow as the factual situation present in *Shaw* should not occur again.

1. The Court hereby **ADOPTS** the construction of the claim terms and phrases within with the '782 and '297 patents as set forth in the Memorandum accompanying this Order and otherwise **ADOPTS** the construction of the claim terms and phrases for the '782 and '297 patents as set forth in the prior claim construction order [Docket Nos. 194 & 309];

2. Because the parties' Joint Motion for Partial Summary Judgment [Docket No. 315] was based upon the prior claim construction order, the parties shall notify the Court via letter within fourteen (14) days from the date of this Order whether they still wish for the Court to grant the stipulated joint motion. Because the Court largely adopted the prior claim construction Order, if the Court does not hear from the parties within fourteen days, the joint motion will be granted;

3. Snyders' Motion for Partial Summary Judgment [Docket No. 409] is **GRANTED** and St. Jude is precluded from raising any anticipation and obviousness defenses under 35 U.S.C. §315(e)(2).


DATED: March 25, 2020
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
Chief Judge
United States District Court