IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| SNYDERS HEART VALVE LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>ST. JUDE MEDICAL S.C., INC., *et al.*,<br><br>  Defendants. | Case No. 18-cv-02030 (JRT/DTS)<br><br>**JURY TRIAL DEMANDED** |

**SNYDERS' MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE CERTAIN PORTIONS OF THE SUPPLEMENTAL REPORTS OF DR. YOGANATHAN, MR. CHANDLER, AND DR. UGONE**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................. 1

II. THE COURT SHOULD EXCLUDE SJM'S EXPERTS' NEW OPINIONS PURPORTING TO APPLY *GEORGIA-PACIFIC* FACTOR NO. 9 ......................................................................................................... 2

III. THE COURT SHOULD EXCLUDE SJM'S NEW GROUND FOR ITS ENABLEMENT AND WRITTEN DESCRIPTION DEFENSES .......... 7

IV. CONCLUSION ..................................................................................................... 8

# TABLE OF AUTHORITIES

**Cases**

*Astrazeneca, AB v. Apotex Corp.,* 782 F.3d 1324 (Fed. Cir. 2019) .......................... 5

*Bettcher Industries, Inc. v. Bunzl USA, Inc.,* 661 F.3d 629 (Fed. Cir. 2011) ........... 4

*Drone Tech., Inc. v. Parrot S.A.,* No. 14-cv-0111, 2015 WL 12752847
(W.D. Pa. April 9, 2015) ................................................................................... 6

*Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y.
1970), *modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion
Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971) ....................................................... *passim*

*Ultratec, Inc. v. Sorenson Comm., Inc*., No. 3:13-cv-346, Dkt. No. 579
(W.D. Wis. Oct. 8, 2014) .................................................................................. 6

**Statutes**

35 U.S.C. § 318(b) ................................................................................................... 3

I.      INTRODUCTION

Dr. Yoganathan, one of SJM's technical experts, and Mr. Chandler and Dr. Ugone, SJM's damages experts, have served supplemental expert reports purporting to analyze *Georgia Pacific* factor no. 9. Under that factor, the advance of the claimed invention over particular prior-art devices can be considered in setting an appropriate royalty rate. But SJM's experts do not offer any actual comparisons between the invention covered by the asserted patent claims and any particular prior-art device—which, of course, they had a full opportunity to do in their original reports. Instead, they compare the patent claims that were confirmed during the IPR proceedings with patent claims that were found unpatentable, assert that the differences between those claims can also be found in prior-art references, and conclude that means that the invention covered by the confirmed claims is not valuable. These new opinions misapply *Georgia Pacific* factor no. 9, have no support in the law, and threaten to derail trial with collateral litigation over the IPR proceedings. The Court should exclude them.

Dr. Yoganathan also presents a new ground in support of SJM's enablement and written description defenses. Like SJM's original grounds for these defenses, this new ground should be excluded because it fundamentally misapplies the governing legal standards. It should also be excluded because SJM has no excuse for waiting until now to present it.

For these reasons, the Court should exclude the portion of SJM's experts' supplemental reports highlighted in Exhibits 1-6.

## II. THE COURT SHOULD EXCLUDE SJM'S EXPERTS' NEW OPINIONS PURPORTING TO APPLY *GEORGIA-PACIFIC* FACTOR NO. 9

Under *Georgia-Pacific* factor no. 9, the differences between the claimed device and prior-art devices can be considered in setting an appropriate royalty rate. *See Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971) ("9.  The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.").

SJM's experts already had a full and fair opportunity in their original reports to address *Georgia Pacific* factor no. 9.  They did not do so.  They offered no opinions that Dr. Snyders' claimed invention represented only a small advance over any particular prior art device.  Instead, all they did in their original reports was argue—incorrectly—that Ms. Schenk's analysis under this factor was inadequate.  *See e.g.,* Ex. 7 at ¶¶ 85-95 [ 12/14/17 Chandler Report]; Ex. 8 at ¶¶ 145-148 [12/14/17 Ugone Report].

Now, in their supplemental reports, Dr. Yoganathan, Dr. Ugone, and Mr. Chandler present a warped version of *Georgia Pacific* factor no. 9 consisting of the

2

following steps:

  (1)  They present claims found unpatentable by the PTAB during the IPR proceedings.

  (2)  They identify what they contend are the deltas between those claims and the claims that the PTAB confirmed during the IPR proceedings.

  (3)  They identify various prior-art references in which they say those deltas are disclosed.

  (4)  They argue that the confirmed claims are not very valuable because the deltas are present in those prior-art references.

  (5)  They conclude that the reasonable royalty for any infringement should thus be on the lower side of the $100,000-$200,000 damages range they previously opined was appropriate in this case.

*See, e.g.,* Ex. 1 at ¶¶ 24, 25-86 [5/6/20 Yoganathan Report] (steps (1)-(4) above); Ex. 2 at ¶¶ 7-8, 19-20 [5/6/20 Chandler Report] (summarizing Dr. Yoganathan's analysis]; Ex. 3 at ¶¶ 3, 6, 8, 9 [5/6/20 Ugone Report] (summarizing Dr. Yoganathan's analysis and concluding that it shows that the reasonable royalty would be "*towards the lower-end* of the $100,000 to $200,000 range" he said would be appropriate in his original report).

Each step of this analysis is deeply flawed.

***Step (1).*** Because none of Dr. Snyders' patent claims have actually been cancelled, the PTAB's decisions have no preclusive effect in this action. *See* 35 U.S.C. § 318(b) (providing that claims are not cancelled until after appeal);

3

*Bettcher Industries, Inc. v. Bunzl USA, Inc.,* 661 F.3d 629, 644-45 (Fed. Cir. 2011) ("This court agrees with Bunzl that § 316 [§ 318(b) under the AIA] defines a determination of patentability to occur only after all appeals have terminated."). Because SJM's experts' new opinions are premised on the existence of binding decisions that certain claims have been found unpatentable, they are fundamentally flawed and should be excluded.

**Step (2).** Under *Georgia-Pacific* factor no. 9, what matters is how the claimed invention compares to prior-art devices, not how a confirmed claim of the patent compares to a claim found to be unpatentable. *See Georgia-Pac. Corp.*, 318 F. Supp. at 1120. SJM's comparison of cancelled claims to confirmed claims simply misses the boat. If anything, SJM's assertion that there is very little difference between the confirmed claims and the cancelled claims actually shows that the Patent Office allowed Dr. Snyders to retain almost the full scope of what he claimed as his invention.

**Step (3).** SJM argues that various prior-art references disclose the deltas between the confirmed claims and the cancelled claims. But those deltas are precisely why the Patent Office rejected SJM's argument that the confirmed claims were unpatentable! So SJM should not now be allowed to argue that Dr. Snyders' patented invention lacks value because every element of his patent claims can be found somewhere in the prior art. *See* Ex. 9 at 22 [3/25/20 Order (Dkt. No. 501)]

4

(granting summary judgment against SJM on its anticipation and obviousness defenses based on IPR estoppel).

**Step (4).** The fact that the deltas identified by SJM are allegedly found in (yet additional) prior-art references is irrelevant. What matters under *Georgia-Pacific* factor no. 9 is the value of the advance over the prior art. Whether a specific delta can be found in yet another prior-art reference says nothing about the value of that delta. *See, e.g., Astrazeneca, AB v. Apotex Corp.,* 782 F.3d 1324, 1339 (Fed. Cir. 2019) ("It is not the case that the value of all conventional elements must be subtracted from the value of the patented invention as a whole when assessing damages. For a patent that combines 'old elements,' removing the value of all of those elements would mean that nothing remains."). Yet that is the full extent of SJM's experts' new opinions: based on their assertions that each element of the confirmed claims can be found in some prior-art reference, they conclude that the confirmed claims lack value.

**Step (5).** At the end of the day, SJM's erroneous analysis under *Georgia-Pacific* factor no. 9 is used to conclude that damages should be at the lower end of the $100,000 to $200,000 range SJM's damages expert previously opined represented the appropriate royalty for any infringement by SJM. But no one cares if damages come in at $100,000 instead of $200,000 in this case. What really matters is whether the damages award should be more than fifty million dollars, as

5

Snyders contends. So all of the prejudice that would result from SJM's experts' new opinions—for example, allowing SJM to argue that every element of Snyders' asserted patent claims are in the prior art when SJM failed to prove that during the IPRs—outweighs any probative value that they possibly have.

In view of the above, SJM's experts' new opinions under *Georgia Pacific* factor no. 9 should be excluded as unreliable. They should also be excluded because they would result in extensive collateral litigation over what happened during the IPR proceedings and its impact on this action. Finally, they should be excluded because SJM could have presented a real analysis of *Georgia Pacific* factor no. 9 in its original reports but chose not to do so. *See, e.g., Drone Tech., Inc. v. Parrot S.A.,* No. 14-cv-0111, 2015 WL 12752847, * 2 (W.D. Pa. April 9, 2015) (rejecting defendants argument that the IPR proceedings "were relevant to a determination of damages" and should be allowed for "the limited purpose of showing that whatever differences there are between the prior art and the claimed invention, they are not extensive"); Ex. 10 at 4 [*Ultratec, Inc. v. Sorenson Comm., Inc.*, No. 3:13-cv-346, Dkt. No. 579 (W.D. Wis. Oct. 8, 2014)] ("[B]ecause of the different standards, procedures and presumptions applicable to IPR proceedings, evidence concerning the proceedings is irrelevant and highly prejudicial to the jury's determination of the validity of the patents. For this same reason, defendants may not rely on the IPR proceedings during the damages phase to argue

that the patents are entitled to diminished value.").

### III. THE COURT SHOULD EXCLUDE SJM'S NEW GROUND FOR ITS ENABLEMENT AND WRITTEN DESCRIPTION DEFENSES

Dr. Yoganathan also presents a new ground in support of SJM's enablement and written description defenses. Dr. Yoganathan now opines that if the "valve element" limitation of Dr. Snyders' patent claims is met by a single leaflet of a tri-leaflet structure, then Dr. Snyders' patent claims are not enabled and lack an adequate written description. *See* Ex. 1 at ¶¶ 87-94 [5/6/20 Yoganathan Report].

This new theory should be excluded for the same reasons SJM's original enablement and written description theories should be excluded. *See, generally,* Ex. 11 at 2-6, 8-10 [Snyder's Original *Daubert* Motion (Dkt. No. 266)]. Dr. Snyders was not required to enable or provide a written description for every possible embodiment covered by its patent claims, and certainly was not required to do so for the specific infringing design chosen by SJM. *See id*. Rather, Dr. Snyders was required only to enable and provide an adequate written description of a valve meeting the limitations that were included in his patent claims. SJM does not dispute that he did so.

SJM's new theory should also be excluded because it is based on a false premise. According to SJM, Snyders is asserting that a tri-leaflet valve with two leaflets removed is covered by Dr. Snyders' patent claims. But that is not what Snyders has asserted. All Snyders has said is that the accused Portico valve—

7

which has three leaflets—is covered by Dr. Snyders patent claims, including, specifically, because any one of the three leaflets meets the "valve element" limitation. That is not an inoperative embodiment that renders Dr. Snyders' patent claims invalid for lack of enablement or written description.

Finally, SJM's new theory is self-defeating. According to SJM, a tri-leaflet valve element, with two of the three leaflets removed, is inoperative and thus not enabled or supported by an adequate written description. But as SJM itself has argued, such a valve would not be covered by Dr. Snyders' patent claims because they require a valve that would be capable of repairing a damaged heart valve, as well as one that would open and close to block and allow blood flow while in operation. *See*, e.g., Ex. 12 at ¶¶ 27-30 [5/6/20 Brown Report]. Because that hypothetical valve would not fall within the scope of Dr. Snyders' patent claims, there is no need for it to be enabled or supported by a written description.

## IV.   CONCLUSION

For the foregoing reasons, the Court should exclude the portion of SJM's experts' supplemental reports highlighted in Exhibits 1-6.

Dated: September 1, 2020          Respectfully submitted,

*/s/ Matthew J. Antonelli*
Matthew J. Antonelli
Texas Bar No. 24068432
matt@ahtlawfirm.com
Zachariah S. Harrington
Texas Bar No. 24057886

8

zac@ahtlawfirm.com
Larry D. Thompson, Jr.
Texas Bar No. 24051428
larry@ahtlawfirm.com
Ryan Pinckney
Texas Bar No. 24067819
ryan@ahtlawfirm.com
ANTONELLI, HARRINGTON &
THOMPSON LLP
4306 Yoakum Blvd., Ste. 450
Houston, TX 77006
(713) 581-3000

J. Ashwin Madia
MN Bar No. 321187
jamadia@madialaw.com
MADIA LAW LLC
323 Washington Ave. N. #200
Minneapolis, MN 55401
(612) 349-2723

Stafford Davis
State Bar No. 24054605
sdavis@stafforddavisfirm.com
THE STAFFORD DAVIS FIRM
815 South Broadway Avenue
Tyler, Texas 75701
(903) 593-7000
(903) 705-7369 fax

Sarah J. Ring
Texas Bar No. 24056213
Sarah@dtlawyers.com
DANIELS & TREDENNICK LLP
6363 Woodway, Dr., Ste. 700
Houston, Texas  77057
Telephone:  (713) 917-0024

Katherine Jochim Van Gunst

9

PO Box 55727
Shoreline, WA 98155
(858) 245-3981
katherine.vangunst.esq@gmail.com

*Attorneys for Snyders Heart Valve LLC*