UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

SNYDERS HEART VALVE LLC,

Plaintiff,

v.

ST. JUDE MEDICAL S.C. INC., ST. JUDE MEDICAL, CARDIOLOGY DIVISION, INC., and ST. JUDE MEDICAL, LLC

Defendants.

Civil No. 18-2030 (JRT/DTS)

**MEMORANDUM OPINION AND ORDER ON CLAIM CONSTRUCTION**

---

Matthew James Antonelli, Christopher Ryan Pinckney, Larry D. Thompson, Jr., and Zachariah S. Harrington, **ANTONELLI HARRINGTON & THOMPSON LLP**, 4306 Yoakum Boulevard, Suite 450, Houston, TX 77006; Niall A. MacLeod, **KUTAK ROCK LLP**, 60 South Sixth Street, Suite 3400, Minneapolis, MN 55347; Stafford Davis, **THE STAFFORD DAVIS FIRM PC**, 815 South Broadway Avenue, Tyler, TX 75701; Sarah J. Ring, **DANIELS & TREDENNICK,** 6363 Woodway, Suite 700, Houston, TX 77057; and Katherine J. Van Gunst, P.O. Box 55727, Shoreline, WA 98155, for plaintiff.

Joseph W. Winkels and Alexander S. Rinn, **CARLSON CASPERS**, 225 South Sixth Street, Suite 4200, Minneapolis, MN 55402; and Bryan S. Hales and Kristina Hendricks, **KIRKLAND & ELLIS LLP**, 300 North LaSalle, Chicago, IL 60654, for defendants.

At this stage of a long-running patent infringement dispute, Plaintiff Snyders Heart Valve ("Snyders") and Defendants (collectively, "St. Jude") have submitted briefs advocating for their proposed constructions of the "sized and shaped" limitation in U.S. Patent No. 6,540,782 ("the '782 Patent"), which Snyders asserts St. Jude is infringing.

Because the Court is not required to adopt St. Jude's proposed construction based on the Federal Circuit's prior decision in the parallel patentability proceedings, and because Snyders has not disclaimed its now-proposed construction of the claim, which comports with the plain language of the claim and the intrinsic record of the '782 Patent, the Court will reject St. Jude's proposed construction and adopt Snyders's.

## BACKGROUND

Snyders and St. Jude have been engaged in this patent infringement litigation for nearly five years. (*See* Compl., Oct. 25, 2016, Docket No. 11.) In short, Snyders asserts that St. Jude is infringing two patents, U.S. Patent No. 6,821,297 ("the '297 Patent") and the '782 Patent, which both relate to artificial heart valves used in a minimally-invasive heart valve replacement surgery. (*See* Am. Compl. ¶¶ 18–37, Jan. 18, 2017, Docket No. 22.) Because the case is familiar to the Court and the parties, only the background relevant to the present claim construction dispute is summarized here.

Simultaneous to this patent infringement litigation, St. Jude filed petitions for inter partes review ("IPR") with the Patent Trial and Appeals Board ("PTAB"), challenging the patentability of the asserted claims based on anticipation and obviousness defenses. *See Snyders Heart Valve LLC v. St. Jude Medical*, No. 18-2030, 2020 WL 1445835, at *2 (D. Minn. Mar. 25, 2020). While the IPR progressed, pretrial proceedings in this litigation continued. (*See, e.g.*, Tr. Oral Ruling Defs.' Mot. Stay at 4:15–19, July 26, 2019, Docket No. 433 (denying a stay of pretrial proceedings during pendency of IPR appeals).) The

Court issued an order on March 25, 2020 addressing claim construction and granting Snyders's motion for partial summary judgment, finding that some of St. Jude's defenses were precluded. *See Snyders Heart Valve*, 2020 WL 1445835, at *8.

In the IPR, the PTAB found a number of the asserted claims unpatentable because they were anticipated by prior art, but on appeal the Federal Circuit found that claims 1, 2, 6, and 8 of the '782 Patent were patentable on the merits.[1] *See St. Jude Medical, LLC v. Snyders Heart Valve LLC*, 977 F.3d 1232, 1235, 1237 (Fed. Cir. 2020). The Federal Circuit concluded that the claims were not anticipated by the key prior art, U.S. Patent No. 5,855,601 ("Bessler"), which discloses an artificial heart valve and method and device for installing it, *see id.* at 1236–37, because the Bessler valve is fitted for the space left after removal of the native heart valve, whereas the Snyders valve is fitted for insertion without excision of the native valve. *Id.* at 1240–42.

After the Federal Circuit revived some of the claims, the parties disputed whether Snyders could still assert those claims in the patent infringement action. *Snyders Heart Valve LLC v. St. Jude Med. S.C. Inc.*, No. 18-2030, 2021 WL 1063005, at *3 (D. Minn. Mar. 19, 2021). The Court found that Snyders had not previously waived the revived claims and could therefore continue to assert infringement of them. (*Id.* at *4.) The Court also

---

[1] The Federal Circuit also reversed and remanded the PTAB's finding of unpatentability on the '297 Patent, but did so on grounds that the PTAB patent judges were unconstitutionally appointed. *See Snyders Heart Valve LLC v. St. Jude Medical*, LLC, 825 Fed. App'x 888, 889–90 (Fed. Cir. 2020).

declined to stay the case while the IPR was remanded to the PTAB and any decision on the merits of the remaining claims was appealed. (*Id.* at *5.)

The Court held a status conference to discuss the best approach to streamline and ready the matter for trial in light of numerous unresolved motions already-filed and additional proposed motions. (Min. Entry, Apr. 15, 2021, Docket No. 738.) The Court instructed the parties to meet with the Magistrate Judge to set a timeline for resolving remaining dispositive and nondispositive motions. (*Id.*) The Magistrate Judge issued a briefing decision ordering, among other things, the parties to file simultaneous memoranda in support of their requested construction of the "sized and shaped" claim term. (Briefing Order at 1, May 7, 2021, Docket No. 756.) The parties submitted *Markman* claim construction briefs and accompanying documents on May 17, 2021. (Pl.'s Markman Brief, May 17, 2021, Docket No. 757; Defs.' Markman Brief, May 17, 2021, Docket No. 758.) The Court now construes the "sized and shaped" claim based on the parties' submissions.

## DISCUSSION

**I.    CLAIM CONSTRUCTION PRINCIPLES**

Claim construction is a question of law for the court. *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1344 (Fed. Cir. 2002). "The purpose of claim construction is to determine the meaning and scope of the patent claims that the plaintiff alleges have been infringed." *Every Penny Counts, Inc. v. Am. Express Co.*, 563 F.3d 1378, 1381 (Fed.

Cir. 2009). Claim terms are given their ordinary and customary meaning as understood by one of ordinary skill in the art at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005).

To ascertain this meaning and define the scope of the invention, courts primarily look to intrinsic evidence, including the words of the claims themselves, the specification, and the prosecution history of the patent. *Id*. at 1313–14. "Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims," *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quotation omitted), unless there is a clear indication in the intrinsic record that the claims were intended to be limited to the specifications, *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004). Further, the Court should avoid adding extraneous limitations to claim language; "that is, limitations added wholly apart from any need to interpret what the patentee meant by particular words or phrases in the claim." *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 950 (Fed. Cir. 1993) (quotation omitted). "[T]here must be a textual reference in the actual language of the claim with which to associate a proffered claim construction." *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 990 (Fed. Cir. 1999).

The Court may also take extrinsic evidence into consideration for claim construction. "Extrinsic evidence consists of all evidence external to the patent and

-5-

prosecution history, including expert inventor testimony, dictionaries, and learned treatises." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995). However, intrinsic evidence is of the primary importance, and extrinsic evidence cannot establish the meaning of a claim term that is at odds with the intrinsic evidence. *Phillips*, 415 F.3d at 1317.

## II.    ANALYSIS

Each claim at issue in the '782 Patent discloses the "sized and shaped" limitation which the Court now construes. (*See* Decl. Matthew J. Antonelli ("Antonelli Decl.") ¶ 2, Ex. 2 (" '782 Patent"), May 17, 2021, Docket No. 759-2.)  Claim 1, for example, recites in relevant part:

> An artificial valve for repairing a damaged heart valve having a plurality of cusps separating an upstream region from a downstream region, said artificial valve comprising:
>
> > a flexibly resilient frame sized and shaped for insertion in a position between the upstream region and the downstream region.

('782 Patent at Col. 10, Lines 22–27.)  Specifically at issue here is the portion, "sized and shaped for insertion in a position between the upstream region and the downstream region," and the Court must determine what is required for a product to be so "sized and shaped."

Snyders has proposed that the claim be construed as "fitted for insertion between the unremoved cusps of the damaged heart valve." (Pl.'s Markman Brief at 4.)  St. Jude

has proposed a construction of "sized and shaped, but not frames 1.5 cm and larger in expanded diameter" or, in the alternative, "sized and shaped, but not frames between 1.5–3.5 cm in expanded diameter."  (Antonelli Decl. ¶ 1, Ex. 1 at 2, May 17, 2021, Docket No. 759-1.)

### A. Federal Circuit Decision

Before examining the plain language of the patent, the Court considers the effect of the Federal Circuit's claim construction in the parallel IPR proceedings.  St. Jude argues that because the Court is bound by the Federal Circuit's construction of the "sized and shaped" limitation, the Court must adopt St. Jude's proposed construction.  St. Jude asserts that Snyders argued, and the Federal Circuit agreed, that the key prior art, Bessler, which discloses a valve with a diameter of about 1.5 to 3.5 centimeters, (*see, e.g.*, Decl. Joseph W. Winkels ("Winkels Decl.") ¶ 3, Ex. 2 at 12–14, Docket No. 760-2), is too big to be within the scope of the "sized and shaped" limitation.  Thus, St. Jude maintains that its proposed construction—that the term excludes frames larger than 1.5 centimeters—is the only way to construe the claim consistently with the Federal Circuit decision.

Indeed, Federal Circuit claim construction decisions have stare decisis effect nationwide.  *Key Pharms. v. Hercon Lab'ys Corp.*, 161 F.3d 709, 716 (Fed. Cir. 1998).  But St. Jude reads too much into the Federal Circuit's reasoning and thereby asks the Court to read a limitation into the "sized and shaped" claim that is not required by the Federal Circuit's patentability finding.  Rather than resting on the actual diameter of the frames,

the Federal Circuit's decision turned on whether the artificial valve was designed to be inserted with or without the native valve removed. *See St. Jude Medical*, 977 F.3d at 1240–42.

On appeal of the IPR on claims 1, 2, 6, and 8 of the '782 Patent, Snyders argued, in relevant part, that the PTAB's construction of the "sized and shaped" limitation in Claim 1 was incorrect because the PTAB's reading "covers frames sized and shaped for installation with the native valve removed," such as Bessler, "rather than only with the troubled native valve remaining in place," as for the '782 Patent. *Id.* at 1240. The Federal Circuit agreed with Snyders, finding that in contrast to Bessler, the '782 Patent describes a valve that is sized and shaped for insertion without removal of the native heart valve, and therefore the '782 Patent was not anticipated by Bessler. *Id.* at 1241. Nowhere in the Federal Circuit decision did the court mention the size or dimension of the Snyders or Bessler valves, and the opinion does not mention Bessler being larger than the '782 Patent frame, discuss measurements in centimeters, or cite the Bessler diameter. Thus, the Federal Circuit's patentability decision does not compel the Court to limit its construction of "sized and shaped" to specific valve dimensions.

### B. Prosecution Disclaimer

Irrespective of the Federal Circuit's reasoning, St. Jude argues that Snyders is precluded from asking for its current proposed construction of the "sized and shaped" limitation, which is not dependent on the diameter of the valve frame, because Snyders

made dimensions-based arguments about the Bessler prior art to shore-up patentability of the '782 Patent during the IPR proceedings, and therefore cannot now advocate a contrary position to save its infringement contentions. "The doctrine of prosecution disclaimer precludes patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1286 (Fed. Cir. 2005) (cleaned up). Prosecution disclaimer, which applies to representations made during IPR proceedings, *see Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1360 (Fed. Cir. 2017), limits claim terms only when a patentee makes "clear and unmistakable prosecution arguments limiting the meaning of a claim term in order to overcome a rejection"; ambiguous disclaimers—subject to more than one reasonable interpretation—do not limit a claim term's ordinary meaning, *SanDisk*, 415 F.3d at 1286–87.

Snyders did not make a clear and unmistakable argument that the "sized and shaped" limitation should be defined based on dimensions. In its briefing at the PTAB, Snyders distinguished the Bessler prior art because it:

> requires removal of the native heart valve prior to insertion of the [artificial] valve, so there is no 'damaged heart valve having a plurality of cusps' remaining to separate the 'upstream region' from the 'downstream region.'. . . . At best, Bessler's valve is 'sized and shaped for insertion' in the much larger space left following the excision and removal of a damaged heart valve, not 'sized and shaped for insertion' into a damaged heart valve having a plurality of cusps.

(Winkels Decl. ¶ 4, Ex. 3 at 27, Docket No. 760-3 (cleaned up).) Likewise, on appeal to the Federal Circuit, Snyders criticized the PTAB's construction of the claim language because "the [PTAB] found that [the 'sized and shaped'] limitations were met by Bessler, even though Bessler's frame is sized and shaped for insertion into the larger space left following removal of the cusps of the damaged heart valve." (Winkels Decl. ¶ 2, Ex. 1 at 28, May 17, 2021, Docket No. 760-1.)

St. Jude focuses on Snyders's references to Bessler being sized and shaped for a "larger space" to show that Snyders must be precluded from asserting its currently-proposed construction because it does not depend on the dimensions of the valve. St. Jude avers that, just as in *Straight Path IP Group, Inc. v. Cisco Sys., Inc.*, these statements amount to "clear-cut representations" which Snyders "cannot now disavow in order to prove its infringement case." No. 16-3463, 2017 WL 6372971, at *1 (N.D. Cal. Dec. 13, 2017).

But the import of Snyders's prior arguments is not so straightforward, as they could be reasonably interpreted as based upon the status of the native valve—whether removed or remaining in place—and the nature of the space for insertion, not the specific dimensions recited by the Bessler prior art. In fact, it appears that it was St. Jude, not Snyders, that first translated Snyders's position into meaning that the Bessler prior art disclosed a valve that was "too big" to anticipate the '782 Patent. (*See* Antonelli Decl. ¶ 7, Ex. 7 at 3, May 17, 2021, Docket No. 759-7.) And Snyders never referenced the specific

1.5 centimeter threshold or 1.5 to 3.5 centimeter range which St. Jude now argues the IPR history requires.

As such, Snyders has not pigeonholed itself into an interpretation of the claim that excludes valves larger than 1.5 centimeters or between 1. 5 to 3.5 centimeters, and the Court will not limit construction of the "sized and shaped" claim such that valves the same size as or larger than the dimensions of Bessler are necessarily excluded from its scope.

### C.     Claim Construction

Finding that neither the Federal Circuit's decision nor Snyders's IPR arguments constrain claim construction, the Court now turns to the limitation at issue to determine its ordinary meaning based on the language of the claim and the patent specifications. *See Phillips*, 415 F.3d at 1312–14.

The language of the claim at issue makes no reference to the dimensions of the valve frame, let alone limits the claim to frames smaller than 1.5 centimeters. Looking to the rest of the patent, the patent shows that the dimensions-based limitation sought by St. Jude is inconsistent with the preferred embodiment, (*see* '782 Patent at Col. 5, Lines 55–63 (stating that dimensions of between 3 and 5 centimeters are preferred in some instances, and between 2 and 3 centimeters in others)), and would invalidate dependent claims, (*see, e.g., id.* Col. 13, Lines 52–59 (reciting dependent claims requiring frame diameters of between 3 and 5 centimeters and 2 and 3 centimeters).)

Because independent claims, such as those containing the "sized and shaped" limitation, are necessarily broader than dependent claims; constructions which invalidate a preferred embodiment are disfavored, *see Kaneka Corp. v. Xiamen Kingdomway Group Co.*, 790 F.3d 1298, 1304 (Fed. Cir. 2015); and because there is no textual reference in the claim with which to associate the centimeter ranges proposed, *Zebco Corp.*, 175 F.3d at 990, the Court rejects St. Jude's proposed construction of the "sized and shaped" limitation based on the language of the limitation and the specification of the '782 Patent.

Instead, the Court will adopt Snyders's proposed construction because it comports with the plain language of the limitation and specification and, as discussed above, is consistent with the Federal Circuit's prior binding order, in which the court found that the '782 Patent language indicates that "sized and shaped" is meant to refer to a valve fitting between the cusps of the intact native valve, and only excludes valves sized and shaped for the space left after removal of the native valve. *St. Jude Medical*, 977 F.3d at 1241. Further, contrary to St. Jude's position that adopting Snyders's proposed construction would render the term superfluous, such an interpretation reinforces the '782 Patent's explicitly-stated purpose of disclosing an artificial valve which can be inserted into a space where the native valve remains. *See id.* at 1240–41.

In sum, based on the plain language, intrinsic record, and binding Federal Circuit IPR claim construction, the Court rejects St. Jude's proposed claim construction, adopts

Snyders's proposed claim construction, and construes "sized and shaped" as "fitted for insertion between the unremoved cusps of the damaged heart valve."

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that the Court hereby **ADOPTS** the construction of the "sized and shaped" claim term as set forth in the Memorandum accompanying this Order.

DATED: August 13, 2021
at Minneapolis, Minnesota.

*John H. Tunheim*
JOHN R. TUNHEIM
Chief Judge
United States District Court